E-FILED
Thursday, 02 August, 2018 04:05:27 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL HUGHES, | ) | |
| | ) | |
| Plaintiff, | ) | 11-CV-3320 |
| | ) | |
| v. | ) | |
| | ) | |
| STEVE DREDGE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE.**

Plaintiff proceeds pro se from his detention in the Rushville Treatment and Detention Center pursuant to the Illinois Sexually Violent Persons Act. He pursues a constitutional claim that the facility provided him inedible food by serving mechanically separated chicken which arrived in boxes marked "for further processing only." He also pursues a constitutional claim arising from the alleged unsanitary food service practices at the facility.

The Court denied the first round of summary judgment motions because the Court needed more information on the division of responsibilities between DHS and Aramark regarding the food service and more information on the procedures, training, and

supervision in place to ensure that food is prepared, served, and stored in a sanitary manner. The Court also asked for more briefing on the legal standard applicable in light of Plaintiff's status as a civil detainee.

The second round of summary judgment motions are now before the Court. Those motions must also be denied except as to qualified immunity for the DHS Defendants on the claim about the mechanically separated chicken marked for further processing only. Defendants make good arguments and jurors could certainly find in their favor, but reasonable jurors could also find in Plaintiff's favor.

## Analysis

As to Plaintiff's claim about the mechanically separated chicken marked for further processing only, Plaintiff contends that the meals made him feel queasy and suffer loose bowels, sometimes diarrhea. (Pl.'s Dep. 42, 95.) The extent and frequency of this reaction was enough to cause Plaintiff to avoid eating the food altogether. Plaintiff did not have a problem with all the meals prepared with mechanically separated chicken, like pre-formed chicken patties, just certain meals which were prepared with mechanically separated chicken for further processing only, like the

chili and spaghetti sauce, which was "heinous." (Pl.'s Dep. 90, 92, 131.)

As the Court concluded in the other cases, serving food 4-6 times a week that is so disgusting as to be inedible is arguably an objectively serious deprivation for civil detainees, or at least that is a question for the jury. The personal involvement and authority of each Defendant is also a question for the jury. The mechanically separated chicken marked for further processing only continued to be served for years, despite over 60 lawsuits filed by some 80 residents. A reasonable juror could conclude that Defendants knew about the problem simply from the furor of so many residents.

However, as the Court has held in other cases with claims about mechanically separated chicken marked for further processing only, the DHS Defendants are entitled to qualified immunity. The Supreme Court reiterated the importance of qualified immunity in White v. Pauly, 137 S.Ct. 548 (7th Cir. 2017). Qualified immunity protects a government actor from liability unless the government actor violates a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Id. at 550. A right is clearly established if the right is

"beyond debate" under existing precedent at the time the violation occurred.  Id.  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Id.

A recitation of cases establishing the obvious rule that detainees are entitled to nutritionally adequate food is not enough to defeat qualified immunity.  A case must be factually similar enough to this case to render Defendants' actions unconstitutional beyond debate.[1]

The Court has not been able to find any case sufficiently similar to this case, either under the Eighth or Fourteenth Amendment.  The cases the Court did find in which possible constitutional violations were identified involved a more objectively serious risk to health and also a more systemic deprivation than the circumstances in this case.

For example, the prisoner in Prude v. Clark, 675 F.3d 732, 735 (7th Cir. 2012) was fed a "sickening food" called nutriloaf for all his meals during his temporary stays in jail for 7-10 days each.  After two days during one of the stays, he began vomiting and

---

[1] This Court did deny Defendant Ashby qualified immunity in the lead "chicken" case, 10-cv-3334, but that was before the Supreme Court's decision in White v. Pauly.

stopped eating the nutriloaf, living instead on bread and water and ultimately losing 8.3% of his body weight. Here, in contrast, Plaintiff offers no evidence that he lost weight or suffered nutritional deficiencies. *Compare with* Smith v. Dart, 803 F.3d 304, 312 (7th Cir. 2015)(detainee's allegation that food was "'well below nutritional value'" stated claim). In short, the Court has not found a case which establishes a clear right not to be served a sickening entree four to six times per week, every week, so long as no known nutritional inadequacies, loss of weight, or danger to health results from avoiding the sickening food. Qualified immunity might not apply to similar claims in the future in this Court, in light of the fact that the Court has concluded the jury could find a constitutional violation.

Defendant Dredge asserts that he, too, is entitled to qualified immunity, citing Meadows v. Rockford Housing Authority, 861 F.3d 672 (7th Cir. 2017). The Seventh Circuit in Meadows held that employees of a private security company were entitled to qualified immunity when they acted at the direct instruction of a city employee to change the locks on an apartment operated by the city housing authority. Here, though, Defendant Dredge is not directly

supervised by DHS employees. Defendant Dredge and his employer Aramark have undertaken to provide all food service at the facility, which means that Dredge falls into the same camp as private medical care providers at the prison, who are not entitled to qualified immunity. *See* Estate of Clark v. Walker, 865 F.3d 544 (7th Cir. 2017)(privately employed nurse at county jail cannot claim qualified immunity); Petties v. Carter, 836 F.3d 722 (7th Cir. 2016)("Even if the defendants preserved this argument, qualified immunity does not apply to private medical personnel in prisons."(*citing* Shields v. Illinois Dep't of Corrections, 746 F.3d 782, 794 (7th Cir. 2014); Tapp v. Proto, 718 F.Supp.2d 598 (E.D. Pa.)("The Aramark employees in this case, including Defendant Proto and his kitchen staff, . . . , have no more reason than private prison guards or medical staff to receive qualified immunity, . . . .").

Defendant Dredge also argues that he cannot be held liable because of his supervisory position. But Dredge is not being sued because he is a supervisor. He is being sued because, looking at the record in the light most favorable to Plaintiff, Defendant Dredge directly participated in the violation Plaintiffs' constitutional rights by failing to take reasonable action despite knowing that the

mechanically separated chicken marked for further processing only was making residents ill and the food service conditions and practices were unsanitary. The Court also rejects Defendant Dredge's argument that he is not a state actor. Dredge is a state actor because he assumed an essential state function. Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 827 (7th Cir. 2009); Jubeh v. Dart, 2011 WL 6010267 *2 (not published in federal reporter)(N.D. Ill. 2011)(rejecting Aramark's state actor argument and collecting cases).

Plaintiff's claim about unsanitary kitchen conditions and unsanitary food service practices survives summary judgment as to all Defendants. Plaintiff submits affidavits recounting unclean conditions in the kitchen and food storage area, along with unsafe food preparation practices, including chronic understaffing, congealed animal blood on the cooler floor, the cutting of raw meat and vegetables with the same knife, the intentional reduction of soap used in the dishwasher, rotten produce, maggots, roaches, vermin, standing water, mold, and bacteria. (Affidavits attached to Plaintiff's Response, d/e 139-6 pp. 6-12; also affidavits filed at d/e 140.) Whether these kinds of problems are systemic or isolated

depends on whether the residents' descriptions are believed, which is for the jury to decide. If the problems are systemic, a rational juror could conclude that the past and current kitchen conditions and food service practices are objectively serious deprivations. Additionally, if Plaintiff is believed, Defendants were repeatedly made aware of these problems but did nothing. Drawing inferences in Plaintiff's favor, a jury could conclude that Defendants were and are deliberately indifferent to the risk of food contamination and food-borne illnesses. *See, e.g.,* Green v. Beth, 663 Fed.Appx. 471 (7th Cir. 2016)(allegation of injuries caused by ongoing problem with contaminated food stated claim). Plaintiff does not have evidence of a serious injury, but that goes to damages, not to whether injunctive relief is warranted. *See* Merritte v. Kessel, 561 Fed.Appx. 546 (7th Cir. 2014)(not published in Fed.Rptr.)("It is well-established that injunctive relief is appropriate 'to prevent a substantial risk of serious injury from ripening into actual harm.'")(*quoting* Farmer v. Brennan, 511 U.A. 825, 845 (1994)). Further, qualified immunity is not warranted on this claim. If the kitchen conditions and food service practices are as described by the residents, deliberately turning a blind eye would obviously violate the residents' clearly

established right to safe food. See <u>Kemp v. Liebel</u>, 877 F.3d 346, 351 (7th Cir. 2017)(right may be clearly established if violation patently obvious, even in absence of closely analogous factual case).

**IT IS THEREFORE ORDERED:**

**(1) The motion for summary judgment by Defendants Ashby, Blaesing, and Scott is granted in part and denied in part. (d/e 130.) On qualified immunity grounds, Defendants Ashby, Blaesing, and Scott are granted summary judgment on Plaintiff's claim about the mechanically separated chicken marked for further processing only. The motion is otherwise denied.**

**(2) The motion for summary judgment by Defendant Dredge is denied. (d/e 125.)**

**(3)** The final pretrial conference is set for September 10, 2018 at 9:30 a.m. Plaintiff shall appear by video. Defense counsel shall appear by video or in person.

**(4)** Magistrate Judge Schanzle-Haskins will pick the jury, with the consent of the parties, on December 10, 2018 at 1:00 p.m.

**(5)** The jury trial will begin on December 11, 2018 at 9:00 a.m. The Court will send out proposed jury instructions for discussion at the final pretrial conference.

**(6)** By August 28, 2018 the parties shall file: 1) an agreed proposed final pretrial order; 2) alternate or additional proposed jury instructions (not duplicative of the Court's); and, 3) motions in limine (to be orally argued at the final pretrial conference).

**(7)** The clerk is directed to issue writs for Plaintiff's personal appearance at the jury selection and trial.

**(8)** The clerk is directed to issue a video writ for Plaintiff's appearance at the final pretrial conference.

**(9)** The clerk is directed to schedule the jury selection on Magistrate Judge Schanzle-Haskins' calendar.

ENTERED: August 2, 2018

FOR THE COURT:     <u>s/Sue E. Myerscough</u>
                                        SUE E. MYERSCOUGH
                                        UNITED STATES DISTRICT JUDGE